UNITED STATES v. AMERICAN NAVAL STORES CO. et al.

(Circuit Court, S. D. Georgia, E. D. April 17, 1909.)

1. MONOPOLIES (§ 10*)—FEDERAL ANTI-TRUST ACT—PENAL PROVISIONS—CONSTITUTIONALITY.

The penal provisions of Sherman Anti-Trust Act July 2, 1890, c. 647, §§ 1, 2, 26 Stat. 209 (U. S. Comp. St. 1901, p. 3200), making it a misdemeanor to engage in any combination or conspiracy in restraint of interstate commerce or to monopolize or attempt to monopolize any part of such commerce, are constitutional.

[Ed. Note.—For other cases, see Monopolies, Dec. Dig. § 10.*]

2. MONOPOLIES (§ 31*)—FEDERAL ANTI-TRUST ACT—INDICTMENT FOR VIOLATION—SUFFICIENCY.

Counts of an indictment charging conspiracy to restrain and monopolize interstate trade and commerce in violation of Sherman Anti-Trust Act July 2, 1890, c. 647, §§ 1, 2, 26 Stat. 209 (U. S. Comp. St. 1901, p 3200), considered, and *held* to sufficiently charge and describe the offense.

[Ed. Note.—For other cases, see Monopolies, Dec. Dig. § 31.*]

3. INDICTMENT AND INFORMATION (§ 125*)—DUPLICITY—VIOLATION OF FEDERAL ANTI-TRUST ACT.

Under Sherman Anti-Trust Act July 2, 1890, c. 647. § 2, 26 Stat. 209 (U. S. Comp. St. 1901, p. 3200), which makes it a misdemeanor to "monopolize or attempt to monopolize * * * any part of the trade or commerce among the several states or with foreign nations," monopolizing and attempting to monopolize such commerce are separate offenses and cannot be included in one count of an indictment.

[Ed. Note.—For other cases, see Indictment and Information, Dec. Dig. § 125.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date; & Rep'r Indexes

Criminal prosecution by the United States against the American Naval Stores Company, Edmund S. Nash, and others. On demurrer to indictment. Overruled.

See, also, 172 Fed. 455; 186 Fed. 31.

Alexander Akerman, Asst. U. S. Atty., W. M. Toomer, Asst. Atty. Gen., for the United States.

W. W. Mackall, Adams & Adams, and Garrard & Meldrim, for defendants.

SHEPPARD, District Judge (orally). The demurrer to the indictment in this case raises both the question of the validity of the penal provisions of the Sherman or anti-trust act and the sufficiency of the indictment under sections 1 and 2 of said act. Act July 2, 1890, c. 647, 26 Stat. 209 (U. S. Comp. St. 1901, p. 3200). The questions raised by the demurrer, and so exhaustively and comprehensively argued by counsel, orally and by brief, have caused anxious and earnest investigation by the court. The statute has been a vexatious one to the courts since it first came under judicial scrutiny, in Re Greene (C. C.) 52 Fed. 104.

Four times, so far as my investigation has disclosed, this statute has received judicial consideration in criminal cases, and in none of these, was the question of the uncertainty and indefiniteness of the penal provisions of the statutes brought squarely before a court as here. Not once has the Supreme Court passed upon this, perhaps, doubtful feature of the act; but a fair and reasonable interpretation of the decisions of that court from United States v. E. C. Knight Co., in 156 U. S. 1, 15 Sup. Ct. 249, 39 L. Ed. 325, as early as 1895, down to the Danbury Hat Case, 208 U. S. 274, 28 Sup. Ct. 301, 52 L. Ed. 488, will uphold the validity of the act. A brief summary of them all is that they hold "that the act prohibits any combination whatever to procure action which essentially obstructs the free flow of commerce between the states or obstructs in that regard the liberty of a trader to engage in business." It does not fail to interest the inquiring student, either, that, in all of the important cases involving the construction of this act by that great court, every section of it has been persistently assailed for uncertainty, ambiguity, absurdity, and unconstitutionality.

The wholesome purpose of the law, as remedial legislation, is I conceive, no longer open to question or cavil by the inferior federal courts, who must, of course, be guided by the construction of the Supreme Court. Said Justice Lacombe, speaking for the Circuit Court for the Southern District of New York, in United States v. American Tobacco Co., 164 Fed. 700, referring to the Sherman act:

"Disregarding various dicta, and following the several propositions which have been approved by successive majorities of the Supreme Court, this language, as prohibiting any contract or combination whose direct effect is to prevent the free play of competition, and thus tend to deprive the country of the services of any number of independent dealers, however small.

"As thus construed, the statute is revolutionary; by this it is not intended to imply that the construction is incorrect. When we remember the circumstances under which the act was passed, the popular prejudice against large aggregations of capital, and the loud outcry against combinations which

186 F.—38

might in one way or another interfere to suppress or check the full, free, and wholly unrestrained competition which was assumed, rightly or wrongly, to be the very life of trade, it would not be surprising to find that Congress had responded to what seemed to be the wishes of a large part, if not a majority, of the community, and that it intended to secure such competition against the operation of natural laws."

It could accomplish no good purpose, as I see at this time, to enter upon a comprehensive review and comparison of the decisions of the inferior federal courts construing the penal provisions of the act. Suffice it to say, that the well-reasoned case decided by Judge Jackson (which I would be inclined to follow if the statute had not received construction by the Supreme Court), who undertook to define the scope of the act and what were criminal monopolies, and what constituted restraint of trade and the sufficiency of an indictment within the purview of the statute, was long prior to the decisions of the Supreme Court in the Swift Case, 196 U. S. 375, 25 Sup. Ct. 276, 49 L. Ed. 518, the Northern Securities Case, 193 U. S. 197, 24 Sup. Ct. 436, 48 L. Ed. 679, and the Joint Traffic Association Case, 171 U. S. 505, 19 Sup. Ct. 25, 43 L. Ed. 259. In view of the interpretation of the statute made in these cases, it is not improbable that Judge Jackson's decision in Re Greene (C. C.) 52 Fed. 104, and Judge Nelson's decision in United States v. Greenhut (D. C.) 50 Fed. 469, and Judge Rick's in Re Corning (D. C.) 51 Fed. 205, would be different.

In so far as the application of the provisions of the statute denouncing as criminal combinations and conspiracies in restraint of trade and monopolies and attempts at monopolies and attempts to monopolize, I am impelled, after some hesitancy and much inquiry, to the ultimate conclusion that until that question is brought squarely before the Supreme Court it would be safer to follow the precedents established by United States v. Patterson et al. (C. C.) 55 Fed. 605, and United States v. MacAndrews, Forbes Company (C. C.) 149 Fed. 823.

Judge Hough of the Southern District of New York overruled a demurrer to an indictment, charging violation of sections 1 and 2 of the Sherman act, and held among other definitions of the act, that:

"Whether any given business scheme falls within the anti-trust law as a combination or conspiracy in restraint of trade, or an attempt at monopoly of a portion thereof, it is to be determined by its effect on interstate commerce, which need not be a total suppression of trade or interstate commerce, nor a monopoly; but it is sufficient if its necessary operation tends to restrain interstate commerce and to deprive the public of the advantages flowing from free competition."

Again, the criminal provisions of the statute received comprehensive treatment from Circuit Judge Putnam, in the case of United States v. Patterson (C. C.) 55 Fed. 605. This case was most exhaustively argued by counsel in which almost every conceivable objection that could be raised to the application of the first two sections of the act were insisted upon, yet the learned judge said:

"I do not think there is any constitutional question in this case, upon any view of this statute or upon the face of the indictment.

"The right of free commerce granted by the Constitution permits broad legislation; and in no sense is this statute as broad as the revised statute

section 5508 on the principal construction pleaded later in United States v. Waddell [112 U. S. 76, 5 Sup. Ct. 35, 28 L. Ed. 673].

"There may be practical difficulties in applying the statute in such a way as to prevent conflicts with the state jurisdiction. Ordinarily a case cannot be made under the statute unless the means are shown to be illegal, and therefore it is necessary, ordinarily, to declare the means by which it is intended to engross or monopolize the market."

The court does not feel embarrassed by the use of the words "trade and commerce." The learned judge goes on to point out the specific offenses denounced by the first two sections of the act, and further on defines the purpose of Congress in this legislation.

Can it be said in view of these decisions that the act, as far as it applies to criminal combinations and conspiracies, should be lightly brushed aside because of its apparent unreasonableness and absurdity, or would it best comport with the due administration of justice to hold its penal provisions effective as against those conspiracies and combinations which are shown by requisite proof to be destructive of the public welfare? It has been asserted by text-writers to be incapable of enforcement because its application would destroy honest enterprise and thrift; perhaps this is an unfounded apprehension.

There are valid statutes impossible of application in all cases to the letter, notably the Trinity Church Case, 143 U. S. 457, 12 Sup. Ct. 511, 36 L. Ed. 226. Blackstone illustrates it, with the law of Bologna, which prohibited the shedding of blood in the streets of the city; but, when a man fell with a fit and had to be lanced as a remedy, no one ever thought by doing so, that the law was violated.

I have considered the indictment in the light of the constitutional requirement that the accused must be informed of the nature and cause of the accusation against him, and the indictment must impart to him, not only all the elements of the offense, but they must be stated in the indictment with clearness and certainty, so as to make the defendant reasonably to understand the act and particular transaction touching which he must be prepared with his proof. The rule is, in prosecutions for offenses against the laws of the United States, the indictment must charge more than the language of the statute upon which it is founded. However, it appears that to some extent this necessity must be governed by the particular facts and circumstances of each case.

It has been held that the test of the sufficiency of the charging or descriptive part of an indictment is not that it might be more specific and certain, but whether it charges enough to put the defendant on notice of what he may expect to meet in the proof. Without critically reviewing the indictment, the first count charges that the defendant conspired in the usual form of a conspiracy charge, and then proceeds to describe with some detail how they were engaged in interstate trade and commerce and the character of the trade points and places, the relation of the officers to the corporation, and then follows a description of the means and ways of effecting the conspiracy.

The second count charges a conspiracy to monopolize and describes in like manner how the monopoly was to be effected, and the general scheme of effecting the objects of that conspiracy. I am of the opinion that these counts charge sufficiently the offense of conspiracy to

put the defendant on notice of the nature of the accusation. The third count is a more difficult proposition. It is very doubtful whether by the use of the generic term "monopolize" and what follows as a description of the offense in this count is sufficient to meet the requirements as laid down in the familiar cases of Cruikshank (92 U. S. 542, 23 L. Ed. 588) and Hess (124 U. S. 483, 8 Sup. Ct. 571, 31 L. Ed. 516). As may be seen, the statute intends to create two distinct and different offenses, viz., monopolizing and attempting to monopolize.

It is elementary that two separate offenses cannot be included in one count of an indictment. Besides, it is important that the defendant should know whether the government will proceed to prove that the defendants monopolized or attempted to monopolize. I think there is clearly a distinction between the two, and, although there is not different punishment provided, the count is bad for duplicity and for lack of certainty.