### CHAMBLISS v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. November 4, 1914.)

No. 4025.

1. CRIMINAL LAW (§ 814*)—INSTRUCTIONS—APPLICABILITY TO EVIDENCE.

 On the trial of a defendant, charged with having introduced liquor into the Indian country in violation of Act July 23, 1892, c. 234, 27 Stat. 260, as amended by Act Jan. 30, 1897, c. 109, 29 Stat. 506, or with having carried liquor into Indian Territory in violation of Act March 1, 1895, c. 145, 28 Stat. 693, an instruction that defendant might be convicted if the jury found that he had in his possession liquor which had recently been introduced into the district from a point without the state and district was erroneous, as not applicable to the evidence, where there was no evidence as to the time when the liquor found in defendant's possession was introduced or carried into the district.

 [Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1821, 1833, 1839, 1860, 1865, 1883, 1890, 1924, 1979–1985, 1987; Dec. Dig. § 814.*]

2. CRIMINAL LAW (§ 814*)—EVIDENCE—PRESUMPTION OF GOOD CHARACTER.

 In the absence of any evidence as to the character of defendant in a criminal case, an instruction that the law presumes his good character, "and such presumption is to be considered as evidence in favor of the accused in considering the question of his guilt or innocence," *held* properly refused.

 [Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1821, 1833, 1839, 1860, 1865, 1883, 1890, 1924, 1979–1985, 1987; Dec. Dig. § 814.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**3. WORDS AND PHRASES—"RECENT."**
  "Recent," as used in connection with the presumption arising from the possession of stolen goods, is a term not capable of exact or precise definition, and varies within a certain range with the conditions of each particular case, and is a question of fact wholly for the jury (citing Words and Phrases, Recent).

In Error to the District Court of the United States for the Eastern District of Oklahoma; Ralph E. Campbell, Judge.

Criminal prosecution by the United States against Ed. Chambliss. Judgment of conviction, and defendant brings error. Reversed.

James C. Denton, of Muskogee, Okl., for plaintiff in error.

Frank Lee, Asst. U. S. Atty., of Muskogee, Okl. (D. H. Linebaugh, U. S. Atty., of Muskogee, Okl., on the brief), for the United States.

Before HOOK and SMITH, Circuit Judges, and AMIDON, District Judge.

SMITH, Circuit Judge. The plaintiff in error, the defendant in the District Court, was indicted, arraigned, pleaded not guilty, tried, convicted, sentenced, and sued out a writ of error to this court.

The indictment, so far as material, charged that Ed. Chambliss on August 27, 1912, in the county of Muskogee, in the Eastern district of Oklahoma, said county and district then and there being a portion of the Indian country of the United States, did carry into said Indian country and into the county aforesaid, from without such Indian country and without the district and state aforesaid, one quart of intoxicating liquor, to wit, beer; the said county and district having been a portion of the territory of the said United States known as the Indian Territory.

It must first be borne in mind that there were two wholly separate and distinct laws or sets of laws on the subject in force at the time in the territory described:

First. The act of the Fifty-Second Congress of July 23, 1892 (27 Stat. 260), as amended by the act of the Fifty-Fourth Congress of January 30, 1897 (29 Stat. 506). United States v. Wright, 229 U. S. 226, 33 Sup. Ct. 630, 57 L. Ed. 1160; United States Express Co. v. Friedman, 191 Fed. 673, 112 C. C. A. 219.

Second. The act of the Fifty-Third Congress of March 1, 1895 (28 Stat. 693, 697). Ex parte Webb, 225 U. S. 663, 32 Sup. Ct. 769, 56 L. Ed. 1248.

Under the act of 1892, as amended by the act of 1897, all persons were prohibited from introducing liquor into the Indian country and from disposing of liquor to any Indian under charge of an Indian agent and the phrase "Indian country" included Indian allotments. Under the act of 1895 all persons are prohibited from carrying liquors into Indian Territory and the manufacture and sale of liquor in said territory is prohibited.

Under the act of 1892, as originally enacted, the punishment was imprisonment for not more than 2 years and a fine of not more than $300; but by the amendment of 1897 the punishment was fixed at not less than 60 days' imprisonment and a fine of not less than $100 for

the first offense and not less than $200 for each subsequent offense. The act of 1895 prohibited the manufacture, sale, or otherwise disposing of any liquor in Indian Territory, or the carrying of any liquor into the territory, under a penalty of not over $500 fine and imprisonment for not less than 1 month nor more than 5 years.

It will be observed that under the acts of 1892 and 1897 the guilty party was subject to a fine without maximum limit, but with a minimum of $100 for the first offense and $200 for subsequent ones. Under the act of 1895 he was subject to a fine with no minimum, but a maximum of $500. Under the act of 1897 the imprisonment was without maximum, except in the discretion of the court, but there was a minimum of 60 days. Under the act of 1895 the maximum imprisonment was 5 years and the minimum was 1 month.

While these offenses were largely identical in character, we have shown in former opinions their points of difference. These laws were all concurrently in force in some cases over identically the same territory. In other cases one was applicable and the other was not. Which of these offenses did the indictment charge? We think it charged both, and as the indictment was in a single count it was probably duplicitous; but, if so, we do not find that question was raised at all. The demurrer did not raise it, first, because it was not enumerated as one of the grounds of demurrer; and, second, the question could not be raised by demurrer. Pooler v. United States, 127 Fed. 509, 62 C. C. A. 307. This question not having been raised at all below, we have nothing to do with it, except to point out that an offense under the acts of 1892 and 1897 is a separate and distinct offense from one committed under the act of 1895.

For all else the indictment was good and sufficient. It was substantially conceded at the trial that the deputy United States marshal and a special officer of the Indian service went to defendant's house in Muskogee on August 27, 1912, and there found in one of the rooms approximately 1,200 pint bottles of beer in 10 barrels and 4 gallons of whisky in a 5-gallon keg. The defendant testified that he bought the liquor of a man named Lee, but it subsequently appeared he referred to Leland McGee; that for perhaps 30 days he had been buying beer and whisky of this man, and it was always delivered at night; that he bought 6 barrels of beer at one time and 10 at another, previous to securing the liquor in question; that he had bought it three or four different times, and in addition had bought a good deal from colored fellows; that he bought this liquor for the purpose of selling it again.

As all the liquor of all his prior purchases was gone at the time this particular liquor was discovered, and he had also sold some of the last installment of liquors which he claims he obtained from Leland McGee, he is confessedly guilty of having sold it, and of violating the first prohibition in the act of 1895. If he had stood indicted for that offense, scarcely anything that could have been introduced into this case would have been prejudicial to him; but he was not indicted for that offense, but for carrying or introducing liquor into the Indian country, or Indian Territory.

[1] Under these circumstances the court charged the jury as follows:

"Because there are certain circumstances under which persons may procure liquor in this district without being guilty of introducing, as that term is used in this statute, the mere fact that one is in possession of liquor of itself would not constitute a prima facie case of introducing. But in a case of this character, where the jury find from the evidence beyond a reasonable doubt that the liquor involved has been recently introduced into this district from a point without the state and district, and that therefore some one has violated the introducing law, and the liquor so introduced illegally is found in the possession of the accused, then, unless there is some explanation which the jury finds consistent with his innocence—that is, consistent with any other condition than that he introduced it—the jury, under such circumstances, are warranted in returning a verdict of guilty; if you find, as I say, liquor recently introduced into this district and in defendant's possession, and his explanation of his possession you do not find to be consistent with any other condition than that he introduced it."

Again the court instructed the jury:

"If inadvertently I instructed you that, if you find from any standpoint that this defendant was in the illegal possession of this liquor, your verdict should be guilty, I did not intend to say that. What I did intend to say, and what I now say, if you find beyond a reasonable doubt from the evidence that the liquor involved in this case was recently introduced from a point without this state and district into this district, the liquor which is conceded to have been in his possession, then the fact of possession under these circumstances would warrant you as a jury in returning a verdict of guilty as against this defendant, unless his explanation with regard to his possession of the liquor is consistent with some other theory than that he introduced it, or was interested in it, or aided, abetted, assisted, or procured its introduction."

Pen. Code (Act March 4, 1909, c. 321) § 332, 35 Stat. 1152 (Comp. St. 1913, § 10506), is as follows:

"Whoever directly commits any act constituting an offense defined in any law of the United States, or aids, abets, counsels, commands, induces, or procures its commission, is a principal."

It was doubtless to this provision that the court referred in this instruction. But, notwithstanding this provision, if, as he claims, without any arrangement or understanding, express or implied, of any kind by the defendant to aid, Leland McGee had imported liquors into Eastern Oklahoma, and having them there had sold them to the defendant, who had nothing to do with the importation, then the defendant would under the evidence be guilty of a violation of the first provision in the act of 1895, because that statute expressly prohibited the sale of liquor in Indian Territory under the same penalty prescribed for carrying such liquors into the territory; but he would not be guilty of the offense of carrying liquors into the territory.

In this case there was not the slightest evidence as to when these liquors were carried into Old Oklahoma or Indian Territory. There was not a syllable of evidence as to when the offense charged was committed, and the sole question is whether there was any justification for this instruction in the evidence. It will be conceded that there was probably no law under which liquors could legally have been in Indian Territory, except possibly the dispensary provision in the Enabling Act (Act June 16, 1906, c. 3335, 34 Stat. 267), as they

could not be manufactured or carried there for 17 years at the time in question. But if the jury found that some one had introduced liquors illegally, the mere finding of the liquors years afterwards in defendant's possession would not warrant it in finding that he introduced them. This was an evident effort to extend the doctrine of recently stolen property to such liquors.

Where any person is found in possession of recently stolen property, the burden of accounting for such possession rests upon him, and it is commonly stated that the possession raises a presumption against the accused which will justify conviction if he does not meet it by a reasonable explanation. It is, however, everywhere conceded that the presumption is one of fact and not of law. 25 Cyc. 134. But in order to warrant a presumption of guilt the possession must be recent. 25 Cyc. 140. The word "recent" is defined by Webster's International Dictionary as:

"1. Of late origin, existence, or occurrence; lately come; not of remote date, antiquated style, or the like; not already known, familiar, worn out, trite, etc.; fresh; novel; new; modern; as recent news."

"Recently" is defined as follows:

"Newly; lately; freshly; not long since."

[3] It must, of course, be conceded that the word "recent," as used in connection with the presumption arising from the possession of stolen goods, is a term not capable of exact or precise definition, and varies within a certain range with the conditions of each particular case, and is a question of fact wholly for the jury. 7 Words and Phrases, 5998. The rule that the recent possession of goods illegally obtained is evidence as against the possessor that he illegally acquired them has been extended to burglary, embezzlement, robbery, and other cases (Wilson v. United States, 162 U. S. 613, 16 Sup. Ct. 895, 40 L. Ed. 1090), but in such cases it has been customary to charge, as the court did here, that such evidence would warrant conviction, not that it created any presumption of guilt. Of course, the principle has been justly extended in cases of murder to the finding of the implement by which it was committed in the defendant's custody.

We do not desire to pass upon questions not necessary to a disposition of this case, and therefore do not determine whether the rule as to recent possession of property applied to intoxicating liquors found in Indian Territory, but content ourselves with saying that all the authorities agree that the weight of such evidence depends upon how soon after the crime the property is found in the defendant's possession, and as there was no evidence when these liquors were imported, and consequently none that they had been recently imported, the instruction had no basis to support it in the evidence, and the case must be reversed. This does not weaken the law, because possession not recently after the importation is admissible in evidence; but it is not for the court to say that it would warrant a verdict of guilty, and again there is no necessity for indicting a defendant in a case like this for introducing liquor, when he is manifestly

subject to indictment for the violation of the law against one who sells, gives away, or furnishes liquor.

[2] There was no evidence offered as to the character of the defendant. He asked the court to instruct the jury:

"You are instructed that the law presumes the good character of the accused, and such presumption is to be considered *as evidence* in favor of the accused in considering the question of his guilt or innocence."

The portion of this instruction that the law presumed the good character of the accused is perhaps correct, but the jury were sought to be instructed that the absence of evidence should be considered evidence in favor of the accused in considering the question of his guilt or innocence. Reliance is placed upon the case of Mullen v. United States, 106 Fed. 892, 46 C. C. A. 22. In that case the trial judge had said:

"Now it is a fact that cannot escape your attention—could not probably escape your attention—that if these defendants desired, or anybody behind them desired, to have colored men deprived of the right of voting, that it would be at such a precinct as this; and it is not improbable that just such men as these defendants would be chosen to carry that object into execution. Those are circumstances that you might weigh in this case in reaching a conclusion."

The defendant objected to this charge and announced that:

"If your honor please, we offered your honor an instruction that the defendants were presumed to be persons of good character, and that that presumption prevailed during the progress of the case."

To which the court responded:

"I do not think that the jury should be told that the defendants are presumed to be persons of good character; but they are presumed, as the court had told the jury, whether of good character or bad character, to be innocent until their guilt has been established to the exclusion of a reasonable doubt by testimony."

It is true that upon examining the written application to charge the jury in that case it is found to correspond with the instruction offered in this case, but it is not referred to in the opinion, except in general terms, and the instruction asked was not analyzed in that case. In substance the instruction in question tells the jury that the absence of evidence should be considered as evidence in favor of accused in considering the question of his guilt or innocence. In Wigmore on Evidence, vol. 4, § 2511, it is said:

"The 'presumption of innocence' is a term which has been the subject of two special fallacies, namely: (1) That it is a genuine addition to the number of presumptions; and (2) that it is per se evidence.

"1. As to the first of these fallacies it is to be noted that the 'presumption of innocence' is in truth merely another form of expression for a part of the accepted rule for the burden of proof in criminal cases; i. e., the rule that it is for the prosecution to adduce evidence (ante, section 2487), and to produce persuasion beyond a reasonable doubt (ante, section 2497). As to this latter part, the measure of persuasion, the 'presumption' says nothing. As to the former part, the 'presumption' implies what the other rule says, namely, that the accused (like every other person on whom the burden of proof does not lie) may remain inactive and secure, until the prosecution has taken up its burden and produced evidence and effected persuasion; i. e., to say in this case, as in any other, that the opponent of a claim or charge is presumed

not to be guilty is to say in another form that the proponent of the claim or charge must evidence it. But in a criminal case the term does convey a special and perhaps useful hint, over and above the other form of the rule about the burden of proof, in that it cautions the jury to put away from their minds all the suspicion that arises from the arrest, the indictment, and the arraignment, and to reach their conclusion solely from the legal evidence adduced. In other words, the rule about burden of proof requires the prosecution by evidence to convince the jury of the accused's guilt; while the presumption of innocence, too, requires this, but conveys for the jury a special and additional caution (which is perhaps only an implied corollary to the other) to consider, in the material for their belief, nothing but the evidence, i. e., no surmises based on the present situation of the accused—a caution particularly needed in criminal cases. So far, then, as the 'presumption of innocence' adds anything, it is merely a warning not to treat certain things improperly as evidence.

"2. As to the second fallacy, it seems to have been mainly propagated by the passage of Professor Greenleaf, declaring that 'this legal presumption of innocence is to be regarded by the jury, in every case, as matter of evidence, to the benefit of which the party is entitled.' But it cannot be regarded as 'matter of evidence.' No presumption can be evidence; it is a rule about the duty of producing evidence (ante, section 2490). This is, in itself, only a matter of the theory of presumptions, and to that extent may be regarded as a mere question of words—of the way of phrasing a rule upon the substance of which there is no dispute. But when this erroneous theory is made the ground for ordering new trials because of the mere wording of a judge's instruction to a jury, the erroneous theory is capable of causing serious harm to the administration of justice."

## In a note to this section Professor Wigmore says:

"A glaring instance of this fault is to be found in the decision of Coffin v. U. S. (1896) 156 U. S. 432, 162 U. S. 664, 15 Sup. Ct. 394, 16 Sup. Ct. 943 [39 L. Ed. 481, 40 L. Ed. 1109], where the opinion of the court, proceeding upon the above phrase of Greenleaf as a leading authority, declares this 'presumption' to be 'evidence in favor of the accused.' This opinion received apparent sanction in the later case of Allen v. U. S. (1896) 164 U. S. 492, 17 Sup. Ct. 154 [41 L. Ed. 528]. But in Agnew v. U. S. (1897) 165 U. S. 36, 51, 17 Sup. Ct. 235 [41 L. Ed. 624], its particularly objectionable sentence, declaring that 'legal presumptions are treated as evidence,' is referred to as 'having a tendency to mislead'; in this case the trial court had refused to give an offered instruction copying that sentence, and the refusal was held proper; so that the Agnew decision may perhaps be taken as a recantation to this extent of the unfortunate heresy put forward in the Coffin Case. It is to be observed that the opinion in the Agnew Case (in 1897) was published subsequently to a notable lecture on the Presumption of Innocence, apropos of the Coffin Case, delivered by Professor Thayer, at Yale University (in 1896), in which the history of the presumption was carefully examined, its meaning acutely expounded, and the fallacies of the opinion in the Coffin Case exposed in detail. This lecture was reprinted in the learned lecturer's Preliminary Treatise on Evidence (1898) Appendix B, p. 551.

"The fallacy of Coffin v. U. S. is substantially repudiated in the following cases: 1899, State v. Soper, 148 Mo. 217, 49 S. W. 1007 (there is not a 'two-ply presumption' in favor of one who is charged with wife murder, repudiating State v. Leabo, 84 Mo. 168 [54 Am. Rep. 91]); 1900, State v. Kennedy, 154 Mo. 268, 55 S. W. 293 (refusal to instruct on the presumption of innocence is not error where an instruction on reasonable doubt has been adequately given); 1896, People v. Ostrander, 110 Mich. 60, 67 N. W. 1079 (similar). The common phrase about the presumption of innocence is illustrated in the following cases: 1898, Bryant v. State, 116 Ala. 445, 23 South. 40; 1897, People v. Winthrop, 118 Cal. 85, 50 Pac. 390; 1899, Emery v. State, 101 Wis. 627, 78 N. W. 145. The following series of rulings shows the influence of the Coffin Case: 1898, Bartley v. State, 53 Neb. 310, 73 N. W. 744 (the phrase sanctioned; but an instruction omitting it is not held erroneous); 1898, Bart-

ley v. State, 55 Neb. 294, 75 N. W. 832 (the Coffin Case noted; question left undecided); 1899, McVey v. State, 57 Neb. 471, 77 N. W. 1111 (following Bartley v. State)."

The Coffin Case, referred to by Professor Wigmore, is the chief authority relied upon in Mullen v. United States, 106 Fed. 892, 46 C. C. A. 22. Of course, that case was upon the law of the presumption of innocence. State v. Linhoff, 121 Iowa, 632, 97 N. W. 77. There seems to be a very limited number of authorities upon whether the presumption of good character is a disputable presumption of law or a presumption of fact. It is evident that a correct instruction could be given upon this subject of the presumption of good character, which would have been undoubtedly ample without embracing either the statement that the presumption is one of law or that it should be treated as evidence. If the jury be instructed that the defendant is presumed to be a person of good character, and that presumption prevails throughout the progress of the case that under all the authorities is sufficient, without stating whether it is a presumption of law or of fact, or that it should be considered as evidence in favor of the accused.

We should therefore be loth to reverse this case for the refusal to give this instruction, if it did not have to be reversed in any event; but out of deference to the opinion of the Supreme Court in Coffin v. United States, 156 U. S. 432, 15 Sup. Ct. 394, 39 L. Ed. 481, and to the opinion of the Circuit Court of Appeals of the Sixth Circuit in Mullen v. United States, 106 Fed. 892, 46 C. C. A. 22, the writer thinks it should have at least been given in a modified form, and the case is reversed and remanded, with directions to set aside the verdict and grant a new trial.

Judges HOOK and AMIDON concur in the reversal upon the first ground. They also concur in nearly all that is said as to the presumption of good character, but are unable to assent to the statement that such a presumption exists in a criminal case. Their views on that subject are expressed in the opinion in Price v. United States, 218 Fed. 149, 132 C. C. A. 1, just filed.