## LEWELLEN v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit.   March 13, 1915.)

### No. 4149.

1. INDICTMENT AND INFORMATION ⊙⟹125—INTRODUCING LIQUOR INTO INDIAN COUNTRY—DUPLICITY.

An indictment charging that the defendant carried intoxicating liquor into the Indian country from without the Indian country and from without the state of Oklahoma is duplicitous, since the offense of introducing liquor into the Indian country, as defined by Act Jan. 30, 1897, c. 109, 29 Stat. 506 (Comp. St. 1913, § 4137), is a different offense from carrying

⊙⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

[1] 223 Fed. 381.

liquor into the Indian territory from without the state of Oklahoma, as defined by Act March 1, 1895, c. 145, 28 Stat. 693, 697.

[Ed. Note.—For other cases, see Indictment and Information, Cent. Dig. §§ 334–400; Dec. Dig. ☞125.

Introducing intoxicating liquors into Indian country, see note to Joplin Mercantile Co. v. United States, 131 C. C. A. 171.]

2. CRIMINAL LAW ☞1028—APPEAL—THEORY IN THE TRIAL COURT.

Where no demurrer for duplicity was interposed to such indictment, but it was treated by the trial court and the instructions were given on the theory that it charged only the offense of carrying the liquor in from without the state, and the conviction was secured on such theory, it will be treated on appeal as charging only that offense.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 2619, 2620; Dec. Dig. ☞1028.]

3. CRIMINAL LAW ☞814—INSTRUCTIONS—APPLICABILITY TO EVIDENCE.

Where the evidence showed only that intoxicating liquor, which was found in defendant's possession in the Indian territory, bore a tag showing that it had been shipped from a point without Oklahoma to a point therein several miles distant from where it was found, and defendant testified that he and another got the liquor from a spot where it was buried in the river bed 19 miles from the destination shown by the tag, it was error to instruct the jury that the possession of liquor recently introduced from without the state, when unexplained, was a circumstance to be considered by the jury in determining defendant's guilt, since there was no evidence that the liquor had been recently introduced into the state.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1821, 1833, 1839, 1860, 1865, 1883, 1890, 1924, 1979–1985, 1987; Dec. Dig. ☞814.]

In Error to the District Court of the United States for the Eastern District of Oklahoma; Ralph E. Campbell, Judge.

L. Lewellen was convicted of introducing intoxicating liquor into the Indian country from without the state of Oklahoma, and he brings error. Reversed and remanded, with directions to grant a new trial.

James C. Denton, of Muskogee, Okl., for plaintiff in error.

Carter Smith, of Muskogee, Okl. (D. H. Linebaugh, of Muskogee, Okl., on the brief), for the United States.

Before SANBORN, ADAMS, and SMITH, Circuit Judges.

ADAMS, Circuit Judge. [1, 2] Defendant Lewellen was tried and convicted in the court below on an indictment reading as follows:

"United States of America, Eastern District of Oklahoma. The grand jurors of the United States of America * * * on their oath do find, present, and charge that one L. Lewellen, on the 13th day of February, A. D. 1913, in the county of Tulsa, state of Oklahoma, in the said district and within the jurisdiction of said court, the said county then and there being a portion of the Indian country of the United States of America, did at the time and place aforesaid unlawfully, knowingly, willfully, and feloniously introduce and carry into said Indian country and into the county aforesaid from without said Indian country, and from without the said district, and from without the said state of Oklahoma, one quart of malt, vinous, spirituous, distilled, ardent, and intoxicating liquor, to wit, beer, the said county and district having been a portion of the territory of the said United States known as the Indian Territory, and at all times was and now is a part of the Indian country of the United States of America, contrary to the form of the statute, * * * *" tee.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The introduction of liquor into the Indian country, as defined by Act June 30, 1834, c. 161 (4 Stat. 729), and as construed in Bates v. Clark, 95 U. S. 204, 24 L. Ed. 471, Clairmont v. United States, 225 U. S. 551, 32 Sup. Ct. 787, 56 L. Ed. 1201, and Evans v. Victor, 122 C. C. A. 531, 204 Fed. 361, constitutes one offense (Act Jan. 30, 1897, c. 109, 29 Stat. 506 [Comp. St. 1913, § 4137]); and the carrying of liq- uor into the Indian Territory from without the state of Oklahoma` constitutes another and different offense (Act March 1, 1895, c. 145, 28 Stat. 693, 697). See Ex parte Webb, 225 U. S. 663, 32 Sup. Ct. 769, 56 L. Ed. 1248; United States v. Wright, 229 U. S. 226, 33 Sup. Ct. 630, 57 L. Ed. 1160; Chambliss v. United States, 218 Fed. 154, 132 C. C. A. 112. The offense denounced by the act of 1897 is com- plete if liquor is introduced into "Indian country," whether it came from outside of the state of Oklahoma or not; but the offense de- nounced by the act of 1895 must involve the element of carrying the liquor from without the state of Oklahoma into some part of what before statehood constituted the Indian Territory. Joplin Mercantile Co. v. United States, 236 U. S. 531, 35 Sup. Ct. 291, 59 L. Ed. ——, just decided. In fact, the gist of the offense denounced by the act of 1895 is its interstate feature, namely, the carrying of liquor into the Indian Territory from without the state of Oklahoma.

In view of this difference between the elements of the two offenses, it is probable that the United States attorney, in drafting the indict- ment against Lewellen, was either uncertain about the law or the facts of the case, and attempted to make averments in one count charging both offenses. This was not permissible; but as there was no special demurrer for duplicity or other attack upon the indictment, and as the trial judge instructed the jury concerning the law govern- ing the second mentioned offense only, namely, the carrying of liquor from without the state into the Indian Territory, and as under that charge the defendant was found guilty "as charged in the indictment" and sentenced accordingly, this court will treat the indictment in the same way, as charging a violation of the offense denounced by the act of 1895 only. Crain v. United States, 162 U. S. 625, 16 Sup. Ct. 952, 40 L. Ed. 1097; Wiborg v. United States, 163 U. S. 632, 16 Sup. Ct. 1127, 1197, 41 L. Ed. 289.

[3] The evidence discloses these facts: That on the morning of February 13, 1913, the defendant Lewellen, while hauling a load of beer near to the city of Tulsa in the state of Oklahoma, was arrested by a United States deputy marshal on the charge laid in the indict- ment; that on the barrels containing the beer there was a tag, known as a shipping tag, denoting, according to its face, that the barrels came from Joplin, Mo., consigned to J. Ammerman, Keystone, Okl.; that the place where he was arrested was without the city limits of Tulsa, but within the county of Tulsa, in what was formerly the Indian Ter- ritory; that the town of Keystone is southwest of Tulsa a distance of about 19 miles. The foregoing facts constituted substantially all the evidence introduced by the government. Lewellen then took the stand in his own behalf, and testified, in substance, that he was driving the beer wagon into Tulsa for a man by the name of Boggs, who

asked him to go over to the city waterworks and get a load of beer for him; that Boggs secured the team from a livery stable in Tulsa, and at his request he (Lewellen) went along with him to help him load the beer; that they went over to the waterworks and found the beer in question, together with some beer which they left there, concealed in a sand bank, in the river bottom; that they loaded the beer into the wagon and started back to Tulsa, which was about a quarter of a mile distant, when he was arrested, and Boggs made his escape. He testified that he had no interest in the beer; that he did not know where it came from; that he was not engaged in the whisky business himself, but was engaged in the business of renting rooms in a house in which his wife and family lived. This was all the evidence in the case.

The court charged the jury, among other things, as follows:

"Any one who carries into this district from without the state * * * any intoxicating liquor, such as beer or whisky, violates a federal law, cognizable in this court. * * * In this case it is established and admitted by the defendant that he had the beer in his possession when he was arrested. Now, possession of beer or whisky by the accused in a case of this character within this district, which the evidence shows has been recently introduced into this district from without the state, in violation of law, and where the evidence in the case fails to account satisfactorily for such possession, consistent with any other theory than that the defendant did introduce it, is a circumstance which the jury may and should consider, together with the other evidence in the case, in determining the guilt of the defendant. * * * That the shipping tags on the barrels showed that they had been shipped, so far as the railroad transportation was concerned, from Joplin, Mo., a point without the state, to Keystone, Okl."

To this charge the defendant excepted. On this evidence and under this charge the jury found the defendant guilty, and he was sentenced by the court to imprisonment in the United States penitentiary at Leavenworth, Kan., for the period of one year and one day, and to pay a fine to the United States of $100, and to stand committed until the fine shall have been paid.

The shipping tags were not only not shown to have been attached to the packages in the usual course of business or by any direction of the defendant, but the packages to which they were attached are shown to have had a very unusual journey and experience, far removed from the usual and ordinary course of business. They were not found at any station, depot, or warehouse on the line of any transportation company between Joplin and Keystone. They first made their appearance concealed in a sand bank in the river bottom 19 miles away from the station to which the consignment appeared, according to the tags, to have been made. In such circumstances we do not think the shipping tags were in themselves competent evidence of any interstate shipment. Not only so, but there is not in this record the slightest evidence that the beer found in Lewellen's possession had been recently, if ever, introduced into the territory. How long the large quantity of beer of which that found in his possession was a part had been concealed in the sand bank is not disclosed. When it was delivered at Keystone, if in fact it ever was delivered there, is not shown, and when it was transported from Key-

stone a distance of 19 miles to the sand bank in the river bottom, where found, is not shown. It therefore appears that there was no substantial evidence in the case warranting a submission of the question whether the beer found in Lewellen's possession was carried into the Indian Territory from without the state of Oklahoma, and not the slightest evidence whether it had been recently introduced into the territory by the defendant from any source.

In view of these conclusions, the court's charge was unwarranted and erroneous. On the authority of Chambliss v. United States, supra, the judgment must be reversed, and the cause remanded to the District Court, with directions to grant a new trial.

And it is so ordered.