UNITED STATES v. DEMBOWSKI.

(District Court, E. D. Michigan, S. D. September 19, 1918.)

No. 6220.

1. ARMY AND NAVY ⬤⟿40—OFFENSES—SEDITIOUS UTTERANCES.

Where defendant, in the presence of a soldier of the national army and others, stated that he would never go into the United States army, that the Kaiser could lick England and France, and would soon come to the United States, and that all would have to acknowledge his supremacy,

⬤⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

etc., such statements were a violation of the Espionage Act, § 3, in that they might obstruct the enlistment and recruiting service, and were calculated to cause insubordination and disloyalty in the military forces.

2. INDICTMENT AND INFORMATION ☞125(2)—DUPLICITY.

It is elementary that two separate offenses cannot be included in one count of an indictment.

3. INDICTMENT AND INFORMATION ☞125(20)—DUPLICITY

Where a statute creates a single offense, but specifies in the alternative different acts, any one of which will constitute the offense, an indictment may charge the commission of such offense by all of the means mentioned, using the conjunctive "and" wherever the statute uses the word "or," without being duplicitous.

4. INDICTMENT AND INFORMATION ☞125(2)—DUPLICITY—ESPIONAGE ACT.

The Espionage Act, § 3, declaring that whoever shall willfully make or convey false reports with intent to interfere with military operations, and whoever shall willfully cause or attempt to cause insubordination, or shall obstruct the recruiting or enlistment services, shall be punished, includes three different offenses, which cannot be joined in one count of an indictment.

5. INDICTMENT AND INFORMATION ☞125(4)—DUPLICITY.

An indictment charging in a single count violations of the Espionage Act, § 3, etc., held not to charge one transaction as a single offense committed by different acts.

6. INDICTMENT AND INFORMATION ☞159(1)—AMENDMENT—WHAT CONSTITUTES —"AMEND."

To amend is to correct or rectify or to free from error; hence to cure an indictment of the defect of duplicity, by striking from the single count in which several offenses were charged, is to amend the same.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Amend.]

7. INDICTMENT AND INFORMATION ☞132(2)—AMENDMENT—PRIORITY.

Where an indictment was duplicitous because charging, in one count, the three several offenses denounced by the Espionage Act, § 3, the United States attorney will not be allowed to elect to rely on one of the offenses and nolle pros. the others; for that would amount to an amendment, and violate U. S. Const. Amend. 5, declaring no person shall be held to answer for an infamous crime unless on presentment of an indictment of a grand jury, etc.

8. INDICTMENT AND INFORMATION ☞125(19)—DUPLICITY.

Where a statute prohibits the doing of a certain thing, or attempting to do such thing, these are merely different modes of doing one thing; hence an indictment in one count charging that defendant with the offense of causing insubordination in violation of the Espionage Act, § 3, and attempting to cause such insubordination, is not duplicitous.

Joseph Dembowski was indicted for violation of the Espionage Act, § 3. On demurrer and motion to quash. Demurrer sustained, and motion to quash granted.

John E. Kinnane, U. S. Dist. Atty., of Detroit, Mich.
A. Joseph Seltzer, of Detroit, Mich., for defendant.

TUTTLE, District Judge. This matter comes before the court on demurrer and motion to quash an indictment charging the defendant with violation of section 3 of the Espionage Act. The indictment, which is in one count, alleges that the defendant, at a time and place specified therein, did—

"willfully and knowingly make and convey false reports and false statements against the United States army and the United States navy, with intent to then and there interfere with the operations and success of the military and naval forces of the United States, and with the intent to then and there promote the success of the enemies of the United States, and did then and there and thereby cause and attempt to cause insubordination, disloyalty, mutiny, and refusal of duty in the said military and naval forces of the United States by the members of such service, respectively, * * * and did then and there willfully obstruct the recruiting and enlistment service of the United States to the injury of the said United States, said false reports and false statements having been then and there made, to wit, No. 105 Martin street, in said city of Detroit, and in a certain saloon at said address, in the presence of certain persons, to wit, one John Hencel, one John Chierpik, one Anna Londka, and one Felix Jorowski, said Felix Jorowski being then and there a member of the military forces of the United States and of the national army thereof, and said false reports and false statements so made being then and there in substance and to the effect that he, the said Felix Jorowski, was crazy to go and fight for the United States, and that he, the said Joseph Dembowski, would like to see the Kaiser come to this country and he would be the first one to help him out; that said Felix Jorowski could do nothing to a German, and that the Kaiser could lick England and France, and would soon come to the United States, and then all you men (meaning above named persons) would have to kiss the Kaiser's hands and feet, and that he, said Joseph Dembowski, would never go into the army of the United States."

The objections to the indictment are that it does not allege any offense against the United States, and that it is bad for duplicity in charging in one count several distinct offenses, to wit:

(a) The offense of making and conveying false reports with intention to interfere with an operation of the military and naval forces of the United States.

(b) The offense of obstructing the enlistment and recruiting services of the United States.

(c) The offense of causing insubordination, disloyalty, and mutiny in the military and naval forces of the United States.

(d) The offense of attempting to cause insubordination, disloyalty, and mutiny in the military and naval forces of the United States.

Section 3 of title 1 of the Espionage Act, being the act of June 15, 1917, c. 30 (40 Stat. 219), is as follows:

"Whoever, when the United States is at war, shall willfully make or convey false reports or false statements with intent to interfere with the operation or success of the military or naval forces of the United States or to promote the success of its enemies, and whoever, when the United States is at war, shall willfully cause or attempt to cause insubordination, disloyalty, mutiny, or refusal of duty, in the military or naval forces of the United States, or shall willfully obstruct the recruiting or enlistment service of the United States, to the injury of the service or of the United States, shall be punished by a fine of not more than $10,000 or imprisonment for not more than twenty years, or both."

[1] I think that there can be no doubt that the making of the statements set forth in the indictment might obstruct the enlistment and recruiting service of the United States, and might also constitute an attempt to cause insubordination, disloyalty, and mutiny in the military and naval forces of the United States. This seems to me so plain that I do not deem it necessary to discuss the subject further. The objec-

tion based on the contention that the indictment does not allege any offense against the United States must be overruled.

Does the indictment charge more than one offense in the same count? If so, it is bad for duplicity. United States v. American Naval Stores Co. (C. C.) 186 Fed. 592; Ammerman v. United States, 216 Fed. 326, 132 C. C. A. 470; Lewellen v. United States, 223 Fed. 18, 138 C. C. A. 432.

[2] As was said in the case first cited, "it is elementary that two separate offenses cannot be included in one count of an indictment."

[3] It is, of course, well settled that where a statute creates a single offense, but specifies, in the alternative, a number of different acts, any one of which will constitute the offense thus created, these various acts not being in themselves separate crimes, but only different means of committing the offense against which the statute is directed, an indictment may charge the commission of such offense by all of the means mentioned in the statute, using the conjunction "and" wherever the statute uses the word "or," and such an indictment will not be duplicitous; and proof of the doing of any one of the acts whereby the offense may be so committed will warrant a conviction of the offense in question.

[4] Does section 3 of the Espionage Act, then, create only one offense, which may be committed in any one of several modes specified, or does it contemplate and create several and distinct offenses? An examination of the language of the section makes it, in my opinion, clear that Congress had in mind several distinct evils, and that in order to guard against all of such evils, and the different dangers consequent upon each, prohibited three different kinds of acts, viz. the willful making of false statements with intent to interfere with the success of our military or naval forces; the willful causing or attempting to cause insubordination, disloyalty, mutiny, or refusal of duty in such forces, and the willful obstructing of our recruiting or enlistment service, to the injury of such service or of the United States. It seems plain that each of the acts thus prohibited is separate and distinct in its nature and object, and that the commission of each of such acts constitutes a distinct and separate offense. In my opinion, therefore, they cannot be joined in one count of an indictment, but, if alleged therein, must be set forth in different counts.

[5] A careful examination of the present indictment shows that it does not charge one transaction as a single offense committed by different acts. It will be noted that it charges the defendant, in the language of the statute, with having done all of the things forbidden by this section of the Espionage Act. It then proceeds to allege that "said false reports and false statements" were made at a time and place specified, and that they consisted of certain language quoted in the indictment. The only false reports or false statements previously mentioned in the indictment were those charged to have been made with intent to interfere with the operation and success of the military and naval forces of the United States. It would seem, therefore, that the making of the statements quoted is charged under the first clause

252 F.—57

of section 3 of this statute. If the other clauses of such section were violated, it is not specifically set forth how, although, from the allegations that these statements were made in the presence of a soldier, it would appear that it was intended to charge the defendant with also having attempted to cause insubordination, disloyalty, mutiny, and refusal of duty in the military forces of the United States. In view, however, of the conclusion which I have reached, that the statute creates, and this indictment charges, three distinct offenses, and that such indictment is therefore bad for duplicity, it is unnecessary to consider to what extent the indictment properly charges the commission of any one of such offenses.

[6, 7] It is, however, urged by the District Attorney that, even if the indictment should be held to be duplicitous, it should not for that reason be quashed, but he should be permitted to elect to rely upon one of the offenses charged and nolle pros. the others. It seems clear that, if the District Attorney is permitted to nolle pros. a portion of this indictment, he will thus, in effect, be permitted to amend it, because, in that event, the indictment on which the defendant is tried will not be the same as that found by the grand jury. An amendment is, in the language of the Century Dictionary, "The correction of an error in a writ, record, or other judicial document." To amend is, according to Webster's New International Dictionary, "To correct; rectify." To amend is to "free from error"; to "remove what is erroneous, superfluous, faulty, and the like." 2 Corpus Juris, 1317. In Words and Phrases, vol. 1, First Series, at p. 368 et seq., and in vol. 1, Second Series, at p. 199 et seq., numerous authorities are cited and quoted showing that an amendment may consist of either the addition to, or the withdrawal from, a pleading or document of a part thereof.

It is, however, well established that, in view of the Fifth Amendment to the United States Constitution, which provides that no person shall be held to answer for * * * an infamous crime unless on the presentment of the indictment of a grand jury, except in certain military cases, an indictment returned by a federal grand jury cannot be amended without being first resubmitted to the grand jury for that purpose. Ex parte Bain, 121 U. S. 1, 7 Sup. Ct. 781, 30 L. Ed. 849.

In the case just cited it appeared that one section of the United States Revised Statutes prohibited the making by any bank official of any false statement with intent to injure or defraud such bank or other company or individual person, or to deceive any officer of such bank, or any agent appointed to examine the affairs thereof. Another section of the Revised Statutes required every such bank to make certain reports to the Comptroller of the Currency. The indictment as returned by the grand jury contained only one count, and alleged that the defendant had made certain false statements in a report, which it was alleged were made with intent to injure and defraud said bank and other companies and individual persons. In another portion of the indictment it was charged that the defendant had made said

false statements and report with intent to deceive the Comptroller of the Currency. A demurrer was filed to the indictment, which was sustained by the trial court. Thereupon, on the motion of the United States Attorney, said court ordered that the indictment be amended by striking out the reference to the Comptroller of the Currency in the portion of the indictment just referred to, thus eliminating an intent to deceive such Comptroller as an element of the crime charged.

The defendant was convicted of the crime thus charged. The case was taken to the United States Supreme Court on the ground that the court erred in permitting this amendment of the indictment, and the Supreme Court, after thoroughly reviewing and discussing the subject, held that the court erred in permitting such amendment, and ordered the defendant discharged from custody. The reasoning and the decision of the court in that case are, in my opinion, decisive of the present case.

It is quite possible that if the indictment in the present case had been limited to one of the various crimes now charged therein, before it had been presented to the grand jury, the latter might not have been willing to return it in that form. It is not unlikely that the required number of jurors were satisfied to return the indictment in its present broad form because of a belief that its scope would be narrowed, as it is now sought to narrow it, to a single offense before the trial. Some members of that tribunal, less than the number necessary to find a true bill, may have found probable cause to believe that one of the crimes thus charged had been committed, while others may have been satisfied of the commission of another of such crimes, but may not have been willing to return an indictment joining these various offenses, except upon the understanding that the defendant would not be actually tried for all such offenses. If this be so, it is impossible to know whether the required number of jurors would have voted for a bill charging only the offense which the District Attorney may elect to rely on. At all events, it certainly cannot be said that if part of this indictment be removed the remainder will constitute the indictment as returned by the grand jury. Furthermore, in view of the manner in which the various allegations in this indictment are connected and interwoven with each other, it would, in my opinion, be impossible to attempt to abandon any of the charges therein made without also amending the form in which the allegations are made; so that, even if there might be cases in which an election and nolle pros. of part of a count would not necessarily involve an amendment of the indictment, yet this is certainly not such a case.

[8] In conclusion, it may be noted that the defendant contends that the offense of causing insubordination, disloyalty, etc., is a separate and distinct crime from that of attempting to cause such insubordination, etc. It is, however, well settled that where a statute prohibits the doing of a certain thing, or attempting to do such a thing, these are merely different modes of committing one offense, and an indictment charging such offense may allege its commission in both of such modes, and will not be duplicitous on that account. Connors v. United States, 158 U. S. 408, 15 Sup. Ct. 951, 39 L. Ed. 1033;

Crain v. United States, 162 U. S. 625, 16 Sup. Ct. 952, 40 L. Ed. 1097; May v. United States, 199 Fed. 53, 117 C. C. A. 431.

For the reasons stated the demurrer must be sustained and the motion to quash granted, and an order to that effect will be entered.

———————
☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes